## Maynard King *versus* Lyman Moore.

An assignment by an insolvent debtor, of a part of his property, in trust for the benefit of his creditors, provided for the payment, first, of certain sureties, also creditors, including the plaintiff, who was one of the assignees, in full, if the property should be sufficient, otherwise *pro ratâ*, and then of such other creditors as should become parties to the assignment, in full or *pro ratâ ;* and the assignees covenanted to dispose of the property and pay over the proceeds in manner aforesaid, within one year, and the " creditors " becoming parties to the assignment, agreed, " upon being paid in manner aforesaid, to cancel and discharge their respective demands." It was *held,* that the execution of the indenture of assignment by the plaintiff, and his acceptance of the trust, operated as a full and immediate discharge and satisfaction of his claims both as surety and as creditor ; so that a subsequent conveyance to him by the debtor, of other property, as further security for those creditors was without consideration and invalid against a creditor not a party to the assignment.

Replevin to recover a quantity of loom castings.

By an agreed statement of facts it appeared, that on February 26th, 1834, Samuel Flagg, of West Boylston, being in failing circumstances, assigned certain real and personal estate, including choses in action, to the plaintiff and Matthew Davenport " and to their assigns, in trust for the benefit of the creditors of the said Flagg, in manner following, viz. the said assignees to be first paid for their services and disbursements, and secondly, the following sureties to be first paid in full, provided the aforesaid property shall be sufficient, if not, then to be paid *pro ratâ*, viz. [enumerating such sureties, and including the plaintiff among them,] also creditors,—all the laborers or machinists in the factory, thirty-three per cent on their demands respectively,--and the first parish in West Boylston, and such other creditors as shall become parties hereunto as aforesaid, to be paid with the residue of said property, in full, should the same be sufficient, otherwise to be paid *pro ratâ*. And the said King and Davenport hereby agree to accept said appointment, and covenant with the said Flagg to sell and dispose of the property aforesaid, and

pay over the proceeds in manner aforesaid, within one year ; and the creditors, whose names are hereunto affixed, hereby agree and covenant with the said Samuel Flagg and the said King and Davenport, to accept this assignment, and, upon being paid in manner aforesaid, to cancel and discharge their respective demands." The plaintiff became a party to the assignment.

It appeared, that Flagg was indebted to the plaintiff in the sum of $ 70 ; that the plaintiff was also surety for him on a note held by the Quinsigamond bank at Worcester, on which the sum of $.750 was due.

On the day after the assignment was made by Flagg, the plaintiff caused a new note for the sum of $ 750, payable to the Quinsigamond bank, to be made, which he carried to Worcester, and the bank being closed, he delivered it to Isaac Davis, Esq., who was a director and the solicitor of the bank, with a request that it might be received by the bank as a substitute for the note which had become due, and that a suit might not be commenced on that note. Mr. Davis, on the opening of the bank, delivered the new note to the cashier ; and it remained at the bank, until the amount due from Flagg and his sureties was paid in full by the plaintiff, which payment was subsequent to the bill of sale hereafter mentioned. The new note was not discounted ; and no vote was ever passed by the directors of the bank, in relation to it.

On February 28th, 1834, Flagg executed a bill of sale of the castings, in the common form, to the plaintiff, they not being included in the assignment. The castings were then on their way from Lowell to West Boylston, in the possession of a carrier ; and the plaintiff, on the same day, took possession of them by virtue of the bill of sale, and contracted with the carrier, to deliver them to him at West Boylston. Before their arrival at West Boylston they were attached by the defendant, who was a deputy sheriff, at the suit of George W. Bolton, a creditor of Flagg, but not a party to the assignment, and were held by the defendant by virtue of the attachment.

At the time when the bill of sale was executed, the plaintiff had been informed that Bolton was taking measures to attach the castings ; and being apprehensive that the property assigned might not be sufficient to secure himself and the other cred-

King
*v.*
Moore.

itors, he obtained the bill of sale to prevent such attachment, and to secure the castings to himself.

The property embraced by the assignment, was afterwards reduced to money or the value thereof ascertained, and amounted to the sum of $ 3,544. The preferred claims, including the two claims of the plaintiff, amounted to the sum of $ 3,315, provided the first parish in West Boylston were entitled under *the* assignment to receive payment of their claim, amounting to the sum of $ 820, in full.

*Oct. 5th.*  *Merrick* and *Dustin*, for the defendant.

C. *Allen* and *Davenport*, for the plaintiff.

*Oct. 10th.*  PUTNAM J. delivered the opinion of the Court. If the bill of sale of the 28th of February is established, the plaintiff should prevail ; otherwise not. The plaintiff contends, that at the time when he took this bill of sale, his claim against Flagg remained in force ; that it was not to be cancelled until it should be paid, and therefore that he had a right to take the bill of sale, and hold the property to his own use ; and that the new note which he caused to be delivered to the bank after the assignment, with intent to pay his liability for Flagg to the bank, gave him a right to take and hold the goods contained in the bill of sale.

The new note, we think, may be laid out of the case. It never was accepted or discounted by the bank ; and we cannot perceive, that it gave the plaintiff any new or greater rights against Flagg than he had before that negotiation was attempted.

And we all think, that by a true construction of the assignment, the plaintiff accepted the property in full discharge of his claims against Flagg, including his liability to the bank, and his own debt. The assignment is not very skilfully drawn, but its general intent is very clear. It was a full accord and satisfaction of all the demands which the creditors who became parties to it, had against Flagg, in consideration of the real and personal estate and choses in action which were particularly described and conveyed by Flagg to the creditors. One year was allowed to the trustees, to reduce the property to cash, and then they were to pay the creditors. The plaintiff himself is one of the trustees, holding funds more than sufficient to pay all the preferred creditors, among whom his name is to be found   It is not for him to say that this debt has not been

paid. No action could have been maintained by him against
Flagg within the year. By accepting the particular property
conveyed, in discharge of his claims, according to the assign-
ment, we all think, that he had no legal right to interfere with
the attachment which the defendant caused to be made upon
the property of Flagg other than that which was conveyed by
the assignment. It follows, that the bill of sale, being without
any valuable consideration, was of no validity ; and that the
defendant's attachment should be held valid.

The opinion of the whole Court is, that there should be
judgment for the defendant, and for a return of the goods
which were replevied.